IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
CLEVELAND DIVISION

| | |
|---|---|
| **GARY ADAMS**, individually and on behalf of all others similarly situated, | Case No. 1:22-cv-02288 |
| Plaintiff, | JUDGE DAVID A. RUIZ |
| vs. | **SECOND AMENDED COLLECTIVE ACTION COMPLAINT** |
| **REGIONAL EXPRESS CLEV INC.**, | **JURY DEMAND ENDORSED HEREON** |
| – and – | |
| **REGIONAL EXPRESS INC.**, | |
| – and – | |
| **SALVATORE CAIAZZO, JR.**, | |
| Defendants. | |

Plaintiff Gary Adams, individually and on behalf of all others similarly situated, for his Second Amended Collective and Class Action Complaint against Defendants Regional Express Clev Inc., Regional Express Inc., and Salvatore Caiazzo, Jr. ("Defendants"),[1] states and alleges as follows:

## INTRODUCTION

1. This case challenges policies and practices of Defendants that violate the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219.

2. Specifically, Defendants have a company-wide policy and practice of deducting 30-minutes of unpaid lunch time, even though Defendants know that drivers, including Plaintiff

---

[1] Filed pursuant to 9/27/2024, Order [non-document] granting Plaintiff's Motion for leave to file a Second Amended Complaint.

and those similarly situated, routinely worked through the entire 30-minute unpaid meal break or otherwise were interrupted with work activities during the unpaid breaks.

3. Plaintiff brings this case as a "collective action" pursuant to 29 U.S.C. § 216(b), which provides that "[a]n action to recover the liability" prescribed by the FLSA "may be maintained against any employer … by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." Plaintiff brings this case individually and on behalf of other "similarly situated" persons who may join this case pursuant to § 216(b) (the "Opt-Ins").

## JURISDICTION AND VENUE

4. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).[2]

5. Venue is proper in this forum pursuant to 28 U.S.C. § 1391 because Defendants perform substantial business in this District and Division. Defendant Caiazzo owns and operates Defendants Regional Express Clev Inc. and Regional Express Inc., which are incorporated in Ohio, Defendant Regional Express Clev Inc. resides in this this District and Division, and because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District and Division.[3]

## PARTIES

6. Plaintiff Dixon is an adult individual residing in Cleveland, Ohio (Cuyahoga County).

7. Plaintiff Adams is an adult individual residing in Richmond Heights, Ohio (Cuyahoga County).

---

[2] "Defendants admit the Court has subject matter jurisdiction . . ." (Doc. No. 38 at ¶5).

[3] "Defendants admit the Court has proper venue . . ." (*Id.* at ¶6).

8. Plaintiff Adams was jointly employed by Defendants from approximately October 2018 through March 2021, as a non-exempt delivery driver who was paid on an hourly basis of approximately $15.00.

9. Plaintiff's written Consent to Join form was previously filed. (ECF No. 17-1).

10. At all relevant times, Plaintiff and those similarly situated were employees within the meaning of 29 U.S.C. § 203(e).

11. Defendants Regional Express Clev Inc. and Regional Express Inc. are for-profit Ohio corporations that can be served via their statutory agent: GT Network Inc., at 143 Boardman-Canfield Road #250, Boardman, OH 44512.

12. Defendant Caiazzo owns Defendants Regional Express Clev Inc. and Regional Express Inc., and owns Regional Express Atl. Inc. and Regional Express Pitt. Inc.[4]

13. At all relevant times, Defendants were individual and joint employers within the meaning of the FLSA.

14. At all relevant times, Defendants individually and jointly constituted an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1).

15. At all relevant times, Plaintiff and those similarly situated have been employees engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 206-207.

---

[4] Doc. No. 68-1 at PageID #: 594, 599, ¶¶18.

## FACTUAL ALLEGATIONS

**A. Defendants are joint employers that jointly operate in multiple states.**

16. Defendants, along with Regional Express Atl Inc. and Regional Express Pitt Inc., jointly operate last-mile delivery services in Ohio, Georgia, Pennsylvania, and Florida.[5]

17. Defendants jointly hold themselves out on the internet, including websites such as LinkedIn, Facebook, as providing delivery services "in Cleveland, Pittsburgh and Atlanta." (*See* **Exhibit A**, generally.).

18. Defendants jointly employed Plaintiff and others similarly situated as last-mile delivery drivers. In which their job duties are to "[d]eliver packages in a safe, timely, [and] secure fashion." (*Id*. at 7).

19. Plaintiff and other similarly situated employees were non-exempt employees under the FLSA and were paid an hourly wage.

20. In performing their duties for Defendants, Plaintiff and those similarly situated used vehicles weighing less than 10,001 pounds GVWR. (*See e.g.*, *Id*. at 7) ("Must be able to safely and efficiently operate and navigate a delivery van, GVWR 10,000lbs or less while following a GPS/turn-by-turn directions.").[6]

21. Defendants jointly exercised operational control over significant aspects of the day-to-day functions of employees, including Plaintiff and those similarly situated. For example, Defendants admitted that they are commonly owned, along with Regional Express Atl Inc. and

---

[5] As outlined below, Defendants routinely hold themselves out as also operating in Florida, though most of their shared logos include only Ohio, Georgia, and Pennsylvania. *See also*, https://www.aboutamazon.com/news/transportation/how-amazons-dsp-program-has-created-26-billion-in-revenue-for-owners (last viewed 12/19/23).

[6] "Defendants admit these allegations." (Doc. No. 38 at ¶20).

4

Regional Express Pitt Inc. (ECF No. 9 at PageID #: 56) ("[Regional Express Atl Inc. and Regional Express Pitt Inc.] have no Ohio connection other than the fact that the owner of Regional Express Clev Inc. and Reginal Express Inc. commonly owns all of these entities.").[7]

22. On December 1, 2023, Defendant Caiazzo submitted a sworn declaration outlining, in detail, his demonstrated knowledge of job duties, the application process, and new-hire paperwork, admitting that he owns Defendants Regional Express Clev Inc. and Reginal Express Inc., along with Regional Express Atl Inc. and Regional Express Pitt Inc. (Doc. Nos. 68-1; 69-1).

23. Upon information or belief, Defendants jointly use a logistics mobile device management system called "Codeproof" which "allows [Defendants] to have control over software and devices and visibility to ensure [Defendants'] employees have the proper equipment to do their job each and every day."[8]

24. Defendants' Vice President (VP) of Operations, CJ Brown, was reported as being "in charge of handling the operations of a 300-strong Delivery Service Partner (DSP) team for Amazon Logistics. Operating in Cleveland, Youngstown, Pittsburgh, and Atlanta with an eye on further expansion."[9] Defendants' VP of Operations acknowledged that "[m]anaging 275 drivers with the high standards demanded by Amazon is no easy task. Part of great delivery is ensuring that the drivers are focused, that messaging across the company is uniform, and that company data is secure."[10]

---

[7] *See also*, Doc. No. 68-1 at PageID #: 594, 599, ¶¶18.

[8] https://www.codeproof.com/case-study/regional-express/ (last viewed 12/21/23); "Defendants admit that CJ Brown is part of management . . ." (Doc. No. 38 at ¶23).

[9] https://www.codeproof.com/case-study/regional-express/ (last viewed 12/21/23); "Defendants admit that CJ Brown is part of management . . ." (Doc. No. 38 at ¶24).

[10] https://www.codeproof.com/case-study/regional-express/ (last viewed 12/21/23).

25. In describing "problems, particularly with managing the devices for so many drivers," Defendants' VP of Operations is reported to have said that "he was initially working with little to no tech infrastructure when preparing phones to be given out with the requisite apps installed," that "[t]his was a problem, as it slowed down their work with Amazon Logistics, which required Regional Express to operate a highly time sensitive, 7 days a week, and 365 days a year operation."[11]

26. The report describes Defendants' operation consisting "of a patchwork of apps . . . for meetings, chat, and video conferencing . . . with functionalities like check-in, scheduling, and navigation."[12]

27. Defendants' VP of Operations is quoted as saying "[w]hen we send them out, we are still able to execute at a high level."[13]

28. Defendants' CEO Sal Caiazzo is reported to have chosen Codeproof "[t]o manage all these apps, and devices, and ensure the quality of their delivery business."[14]

29. As to provisioning and managing their jointly operated delivery services, Defendants' VP of Operations is quoted as saying that "[i]t's pretty simple filling in and downloading things, and making sure things are updated automatically."[15] Defendants' VP of Operations' favorite features for managing Defendants' drivers are reported to include app restrictions for "eliminating distractions for the drivers, ensuring a focus on high quality delivery" and GPS tracking which is "used to track

---

[11] *Id*.

[12] *Id*.

[13] *Id*. (internal quotations omitted).

[14] *Id*.; "Defendants admit Sal Caiazzo is part of management . . ." (Doc. No. 38 at ¶27).

[15] *Id*.

6

devices with up-to date location history and address (not just coordinates), which can be exported as an Excel file."[16]

30. Defendants' VP of Operations is reported to be "excited [to] use . . . the 'Send Message,' which can send messages individually or in bulk to be displayed directly on the home screen of the [drivers'] phones. Once a user clicks 'ok,' it sends feedback to the administrator that the message has been read."[17]

31. Defendants' VP of Operations is reported to have described that "on one occasion a driver was stuck on the road and needed help," and Defendants' VP of Operations "reached out to Codeproof, [and] the issue was resolved instantly and the delivery was completed."[18]

32. Defendants' VP of Operations is reported as wanting "to switch his focus from directly managing a large number of devices to training people to use them" and that his "relationship with the Codeproof team continues to strengthen" as Defendants' "continue[] to add more employees and devices."[19]

33. Defendants shared authority to hire, fire and discipline employees, including Plaintiff and those similarly situated. For example, Defendants jointly list job postings on the internet for locations across multiple states, including: Ohio (Cleveland, Brooklyn, Twinsburg); Georgia (Atlanta, Alpharetta, Marietta, Woodstock, Ellenwood, Roswell); Florida (Sarasota, Englewood, Port Charlotte); and Pennsylvania (Pittsburgh, Coraopolis). (**Ex. A** at 4-6). Defendants jointly post nearly identical opportunities for these four states. (*Id*. at 9-16).

---

[16] *Id*. (internal quotations omitted).

[17] *Id*.

[18] *Id*.

[19] https://www.codeproof.com/case-study/regional-express/ (last viewed 12/21/23) (internal quotations omitted).

34. Defendants jointly advertise that they are "actively seeking drivers" and are "looking for team members who are problem solvers, reliable, hardworking, motivated, dependable, eager to learn and want to be part of a dynamic team!" (*Id*. at 6.)

35. While Defendants posted that they were "holding open interviews every week" in "Coraopolis, PA", in the same Facebook thread, Defendants jointly responded to a prospective applicant who lived in Ashtabula, Ohio, that Defendants "also have a Brooklyn, OH location," and that Defendants would "love to have [the prospective applicant] come by for an interview." (*Id*. at 8). It appears, therefore, that applications for at least Pennsylvania and Ohio can be emailed to the same person, "Mike at myoung@rgnlexpress.com". (*Id*.).

36. Defendants shared authority to set rates and methods of compensation of employees, including Plaintiff and those similarly situated. For example, Defendants jointly solicit job applicants across multiple states, advertising "[b]enefits" such as: "a $1,000 Sign-On Bonus"; "Hourly Salary"; "Pay Rate[s]" of "$18.25 to $21.25 an hour"; "Gift cards and/or Prizes"; "Bonuses, Raffles and Drawings"; "Overtime as required"; "Paid Weekly Direct Deposit"; "Paid Training"; "Incentive pay for top performers"; "Weekends Available"; "Profit sharing"; and others. (*Id*. at 6).[20]

37. Defendants shared authority to control the work schedules and employment conditions of employees, including Plaintiff and those similarly situated. For example, Defendants' multi-state job postings include references to: "Peak week(s)"; "Overtime as required"; "Weekends Available"; "Consistent Work"; "Accommodations if needed"; "Promotions"; and others. (*Id*. at 6).

38. Also, Defendant Caiazzo conducted meetings, in which the following job duties and working conditions were discussed: doing a better job delivering items on certain routes; proper

---

[20] Plaintiff reserves the right to amend this complaint to add a regular rate claim, if discovery reveals such a claim.

8

placement of packages; knocking and ringing doorbells when delivering; and policies concerning pulling into driveways during deliveries.

39. Defendants shared authority and control of employment records. For example, Defendants' nearly identical multi-state job postings include directions to "bring two forms of ID ("Drivers Lic. And SS card"), and Defendants designate individuals to handle applications and written interview requests by providing specific email addresses such as "cschlueterknc@gmail.com", "twhitney@rgnlexpress.com", and "myoung@rgnlexpress.com". (*Id*. at 8-11).

40. Defendant Caiazzo's previously submitted sworn declarations demonstrate his authority and control over employment records. (Doc. Nos. 68-1; 69-1).

41. Defendants jointly benefitted from the work performed by Plaintiff and those similarly situated. As noted above, Defendants jointly employed Plaintiff and those similarly situated in their "for profit" delivery services.

42. According to the U.S. Department of Transportation (DOT), Defendant Regional Express Inc. and Regional Express Atl. Inc. share the same exact mailing in Georgia.[21]

43. Similarly, the DOT has Defendant Regional Express Inc.'s physical Ohio address as exactly matching both Regional Express Pitt. Inc.'s physical and mailing addresses.[22]

---

[21] Compare, https://safer.fmcsa.dot.gov/query.asp?searchtype=ANY&query_type=queryCarrierSnapshot&query_param=USDOT&original_query_param=NAME&query_string=3063210&original_query_string=REGIONAL%20EXPRESS%20INC and https://safer.fmcsa.dot.gov/query.asp?searchtype=ANY&query_type=queryCarrierSnapshot&query_param=USDOT&original_query_param=NAME&query_string=3340059&original_query_string=REGIONAL%20EXPRESS%20ATL%20INC (last viewed 12/19/23).

[22] https://safer.fmcsa.dot.gov/query.asp?searchtype=ANY&query_type=queryCarrierSnapshot&query_param=USDOT&original_query_param=NAME&query_string=3340083&original_query_string=REGIONAL%20EXPRESS%20PITT%20INC (last viewed 12/19/23).

9

**B. Defendants failed to pay all time worked because they deducted 30-minute unpaid meal breaks, even though drivers were still working during the entire meal break or their meal breaks were interrupted by work.**

44. Plaintiff and others similarly situated routinely worked through unpaid meal breaks, or were interrupted by work during the unpaid break, which resulted in unpaid compensable time, and therefore overtime violations in weeks when they worked 40 or more hours.

45. Defendants have a company-wide policy of deducting 30-minutes for unpaid meal breaks. These deductions are made regardless of whether the drivers, including Plaintiff and those similarly situated, actually took their meal breaks at all or when the meal breaks were otherwise interrupted by work duties.

46. Upon information and belief, this company-wide policy was motivated by Defendants' financial interests, because it affected Defendants' rating with Amazon, and therefore, the profitability of Defendants' relationship with Amazon.

47. Because of the demands of delivering packages,[23] Plaintiff and those similarly situated would not be able to complete all assigned deliveries on time if they took a full 30-minute lunch.

48. Even though Plaintiff and those similarly situated took no lunch, their lunches were interrupted by work, or they took no more than a 10- to 15-minute breaks, Defendants nevertheless still deducted a full 30-minute meal break.

49. Plaintiff and those similarly situated routinely worked 40 or more hours. For example, Plaintiff often worked approximately 50 to 60 hours per week.

---

[23] *See e.g.*, https://www.codeproof.com/case-study/regional-express/ (last viewed 12/21/23) (Defendants' VP of Operations describing problems that "slowed down their work with Amazon Logistics, which required Regional Express to operate a highly time sensitive, 7 days a week, and 365 days a year operation.").

10

50. Accordingly, by not paying Plaintiff and those similarly situated for missed or interrupted meal breaks, or for short rest breaks of 20 minutes or less, Defendants violated the FLSA and Ohio law by not paying them all wages due, including overtime compensation.

51. Defendants knowingly and willfully engaged in the above-mentioned violations of the FLSA. For example, Defendants expressly encouraged Plaintiff and others similarly situated to not take their full, uninterrupted lunch breaks. Instead, Defendants told Plaintiff and those similarly situated to just take shorter breaks on their own.

52. Defendants monitored their vehicles' idle time, and Plaintiff and those similarly situated would be asked by management why they were idle when the drivers took breaks that were longer than 10 to 15 minutes.

53. Also, being the ones who controlled drivers' schedules and monitored their activity Defendants knew that Plaintiff and others similarly situated would not be able to complete all of their delivery times if they took the full 30-minute unpaid lunch, and despite knowing this, Defendants still deducted the 30-minutes from the delivery drivers' paid time.

54. Accordingly, Defendants knew that Plaintiff and others similarly situated were working through unpaid 30-minute lunch breaks, or otherwise being interrupted during the unpaid 30-minute lunch breaks, and knowingly still deducted the 30-minutes from their paid and recorded work time.

## COLLECTIVE ACTION ALLEGATIONS

55. Plaintiff brings this action on his own behalf pursuant to 29 U.S.C. § 216(b), and on behalf of all other similarly situated persons who have been, are being, or will be, adversely affected by Defendants' unlawful conduct.

56. The collective that Plaintiff seeks to represent and for whom Plaintiff seeks the right to send "opt-in" notices for purposes of the collective action, and of which Plaintiff is himself a member, is composed of and defined as follows:

> **All current and former hourly delivery drivers who worked 40 or more hours during a workweek at any time from December 20, 2019, through final disposition of this matter.**[24]

57. This action is maintainable as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) as to claims for unpaid overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA. In addition to Plaintiff, numerous current and former employees are similarly situated with regard to their claims for unpaid wages and damages. Plaintiff is representative of those other employees and is acting on behalf of their interests as well as his own in bringing this action.

58. These similarly situated employees are known to Defendants and are readily identifiable through Defendants' payroll records. These individuals may readily be notified of this action and allowed to opt-in pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for unpaid overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA.

## COUNT ONE
### (FLSA Overtime Violations)

59. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

60. Plaintiff and other similarly situated employees were not paid for all time worked, because Defendants deducted 30-minute meal periods even though they worked through the meal

---

[24] The collective sought is not intended to include individuals for which Defendants produce valid/enforceable arbitration agreements. (*See e.g.*, ECF No. 83).

periods or were otherwise interrupted by work duties. Nor was this work time counted towards total weekly hours.

61. Plaintiff and other similarly situated employees regularly worked 40 or more hours per workweek for Defendants.

62. Defendants' practice and policy of not paying Plaintiff and other similarly situated employees for all work time resulted in Defendants' failure to pay Plaintiff and other similarly situated employees overtime compensation at a rate of one and one-half times their regular rate of pay for all hours worked in excess of 40 hours per workweek, in violation of the FLSA, 29 U.S.C. §§ 201-219, 29 C.F.R. § 785.24.

63. By engaging in the above-mentioned conduct, Defendants willfully, knowingly, and/or recklessly violated provisions of the FLSA.

64. As a result of Defendants' practices and policies, Plaintiff and other similarly situated employees have been damaged in that they have not received wages due to them pursuant to the FLSA.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of all persons similarly situated, prays that this Honorable Court:

A. Permit Plaintiff to send Court-Supervised FLSA Notice to similarly situated persons informing them of this action and enabling them to opt-in;

B. Find that Plaintiff and others like him are "similarly situated" under the FLSA;

C. Enter judgment against Defendants, jointly and severally, and in favor of Plaintiff and the Opt-Ins who join this case pursuant to 29 U.S.C. § 216(b);

D. Award Plaintiff and the Opt-Ins who join actual damages for unpaid wages;

E. Award Plaintiff and the Opt-Ins who join liquidated damages equal in amount to the unpaid wages found due to Plaintiff and the Opt-Ins;

F. Award Plaintiff and the Opt-Ins who join pre-judgment and post-judgment interest at the statutory rate;

G. Award Plaintiff and the Opt-Ins who join attorneys' fees, costs, and disbursements; and,

H. Award Plaintiff and the Opt-Ins who join further and additional relief as this Court deems just and proper.

Respectfully Submitted,

**NILGES DRAHER LLC**

*/s/ Robi J. Baishnab*
Robi J. Baishnab (0086195)
1360 East 9th Street, Ste. 808
Cleveland, OH 44114
Telephone: (216) 230-2944
Facsimile: (330) 754-1430
Email: rbaishnab@ohlaborlaw.com

Shannon M. Draher (0074304)
7034 Braucher Street NW, Suite B
North Canton, OH 44720
Telephone: 330-470-4428
Facsimile: 330-754-1430
Email:  sdraher@ohlaborlaw.com

*Counsel for Plaintiffs*

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all claims so triable.

*/s/ Robi J. Baishnab*
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on October 4, 2024, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Robi J. Baishnab*
*Counsel for Plaintiffs*

14